## Shoupe v. Commonwealth.

May 11, 1943.

W. L. Hammond and J. H. Taylor for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

Robert Shoupe, Needham Saylor, Dempsey Saylor and Mahala Gross were seated in a booth in a road house known as the "country club" in Bell County shortly before 9 a. m. on the morning of July 3, 1938. All of the parties were drinking. Shoupe and Needham Saylor had been drinking most of the previous night. Shoupe was seated on one side of the table with one foot placed on the bench across from him. The Saylors were sitting across from Shoupe and Mahala was sitting on that side of the table. A shot from a pistol in the possession of Shoupe struck Mahala in the hip and passed into her

abdomen, causing her death a short while thereafter. Immediately after the shooting, Shoupe, who had one shoe off, was forcibly ejected from the road house by the proprietor. He left the scene and was eventually located in California. He was returned to stand trial early in 1941. That trial resulted in a hung jury. Upon the second one the jury found Shoupe guilty of voluntary manslaughter and fixed his punishment at 21 years in the penitentiary. He is insisting the judgment on that verdict should be reversed, because the court erroneously instructed the jury.

The Commonwealth's version of the shooting is that, shortly before the fatal shot was fired, Shoupe told a girl in the road house, who had said to him that she thought he had quit drinking, that he was pulling one more big drunk and then quitting, and that "Nobody better mess with me"; Mahala started removing the shoe from Shoupe's foot which was placed on the bench, asking if he dared her to throw it across the room, to which Shoupe replied, "I would not do that"; then some one across the room said, "I dare you"; and when she threw the shoe Shoupe fired his pistol at her. Mahala's dying statement was that Shoupe had his shoe off; somebody across the room dared her to throw it; Shoupe said if she did he would shoot her; and when she pitched the shoe he shot her. None of the Commonwealth's witnesses testified they saw the actual shooting.

Shoupe admitted having a loaded pistol in his possession. He said he was handling it and was twirling the cylinder and pulling back the hammer, but that he did not have it pointed toward any one. He denied the Commonwealth's testimony as to the shoe throwing and his threat to shoot Mahala. He said the shooting happened when some one, whom he could not identify, struck his arm, thereby causing the pistol to discharge.

The third instruction authorized the jury to find Shoupe guilty of voluntary manslaughter, which it did, if it believed "* * * that said killing was the direct and natural, though the unintentional, result of reckless, wanton or grossly careless use or handling, if any, of said pistol in twirling or revolving or handling said pistol or in pointing it at the deceased Mahala Gross when the defendant knew it was dangerous to life when so handled by him. * * *" The complaint is there was no evidence showing Shoupe pointed the gun at Mahala, or

that he was using it in a reckless, wanton or grossly careless manner.

The fourth instruction authorized the jury to find Shoupe guilty of involuntary manslaughter if the jury believed that Mahala's death "resulted from an unintentional or careless discharge of a pistol by the defendant in doing a wrongful act, such as handling, twirling or flourishing said pistol, or in pointing said pistol at said Mahala Gross, * * *." Again the complaint is there was no evidence showing Shoupe pointed the pistol at Mahala, or that he was handling, twirling or flourishing it in a careless manner.

Instruction 3A was inserted between Instructions 3 and 4. It told the jury that, if there was a reasonable doubt that Shoupe had been proven guilty under Instruction 1, the usual murder instruction, or Instruction 2, the usual voluntary manslaughter instruction, or Instruction 3, heretofore mentioned, he should be found guilty of the lower offense, voluntary manslaughter, and his punishment fixed as set out in Instructions 2 or 3.

In addition to the complaints heretofore mentioned, Shoupe insists that, even if Instructions 3 and 4 were proper, the reasonable doubt instruction should have referred to No. 4 also. We believe this contention to be sound. The Commonwealth insists that Instruction 4 was unnecessary, and gave Shoupe a benefit to which he was not entitled. If Instruction 3 was proper, and it was, then Instruction 4 should have been given, in view of Shoupe's theory of the shooting. Of course he said the pistol was discharged accidentally when some one struck his arm, but he admitted having the pistol in his hands and twirling the cylinder and pulling back the hammer. This of itself constituted some degree of a careless and reckless handling of a firearm. Indeed, if Shoupe's theory of the case be taken as true, the fact that he had the gun out and was handling it caused Mahala's death. The reasonable doubt instruction should have included all the degrees of the offense upon which instructions were given. Section 239 of the Criminal Code of Practice. Stanley's Instructions to Juries, section 957. See, also, Hayes v. Commonwealth, 210 Ky. 449, 276 S. W. 160, where a similar error occurred.

We may say in closing that, if the evidence on another trial be the same, it would be better if Instructions

3 and 4 made no reference to the pointing of the pistol at Mahala, since there is no evidence that Shoupe actually pointed his pistol at her. Even Mahala's dying statement did not show that he pointed the gun at her, but rather that she threw the shoe and he shot her.

It follows that it is our view that the judgment should be and it is reversed, with directions to set it aside, and for proceedings consistent with this opinion.